CHARLES E. MEECH *vs.* THOMAS MALCOLM.

Third Judicial District, Bridgeport, October Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A finding will not be changed in respect to matters which are simply evidential or immaterial, nor will conclusions drawn from conflicting testimony be disturbed.

The ultimate conclusion reached by the trial court must stand unless the subordinate facts found are legally inconsistent therewith, or unless such conclusion is shown to have been controlled by an erroneous view of the law.

Alleged false representations become immaterial when the person to whom they are addressed does not act upon them, but upon his own personal judgment formed after independent investigation.

A note transferred when overdue is not taken in due course, although it may be assigned in good faith, as in the present case.

As a circumstance affecting the good faith of an assignment of a note, evidence that the assignor was then in financial difficulties is admissible; but the exclusion of such evidence is harmless if the bona fides of the transaction is abundantly shown.

A witness cannot ordinarily testify as to what another's understanding was of a written agreement between third parties. Such testimony is not evidence of a fact, but is at most merely the opinion or conclusion of the witness.

The erroneous admission of a bit of evidence is harmless where the fact sought thereby to be proved is otherwise fully established by competent testimony.

Argued October 28th—decided December 21st, 1914.

ACTION by the indorsee against the maker to recover the amount of a promissory note, brought to and tried

Meech *v.* Malcolm.

by the Superior Court in New Haven County, *Holcomb, J.;* facts found and judgment rendered for the plaintiff for $1,564, and appeal by the defendant. *No error.*

This is an action upon a renewal note dated December 8th, 1909, payable six months after date to Randolph C. Andrus and William D. Johnson, or order, and transferred by them to the plaintiff. The complaint averred that the plaintiff "is now the bona fide holder and owner of said note." The note in suit was the last of a series of renewal notes for one that was originally given by the defendant in May, 1908, to Andrus and Johnson. The original note was given in payment of a certain number of shares of the capital stock of the Four Metals Mining Company of California. The answer denied that the plaintiff was the bona fide holder and owner of the note. It was also averred by the defendant in his answer that he was induced to purchase the stock by the fraud and misrepresentation of the original payees of the note. The defendant also alleged in his answer that a certain pamphlet or prospectus which had been issued by the mining company was the fraudulent means used to induce him to purchase the stock and give the note upon which the plaintiff bases his cause of action.

The Superior Court has found that the defendant was not induced to purchase the mining stock or give this note by the statements and representations of the payees of the note, or by the statements set forth in the pamphlet or prospectus of the mining company, but that the defendant concluded to make this purchase of the stock in consequence of information which he obtained of all the facts from other sources, and by an investigation of the mining property which he personally made before he purchased the stock for which he gave his note. The trial court has also found that the plain-

tiff was the bona fide holder and owner of the note in question. The finding also states that in April, 1908, the Four Metals Mining Company had an agreement for the purchase of the mining properties which were afterward conveyed to it. This agreement was made with one McGrath, as trustee for the company. It was duly recorded in the land records of the county in which the mining property was located. A deed conveying all of the property to McGrath as trustee for the company was also deposited in escrow. This deed was to be delivered upon payment of the purchase price of the property as fixed by the terms of the agreement. This agreement was consummated in March, 1910. In February, 1910, McGrath, by his deed, conveyed all of this property to the mining company.

The defendant, in the spring of 1908, had his office and place of business in Hartford, Connecticut. At this time the Four Metals Mining Company had its principal office in San Jose, California. One Randolph C. Andrus, a stockholder and director of the mining company, was then its authorized agent to sell its stock. During the winter of 1907 and 1908 Andrus was in Hartford selling the stock of the Four Metals Mining Company. One William D. Johnson introduced Andrus to the defendant. Johnson and the defendant were intimate acquaintances, and had their offices in the same building in Hartford. The defendant and Johnson became interested in the properties as described by Andrus, who suggested to them that they go out and investigate and examine the properties for themselves, and this they decided to do. On April 13th, 1908, the defendant, with Andrus, Johnson and one Rhodes, left Hartford, and they went to the mines of the company, located near Keeler, California.

While at the mines the defendant personally met McGrath, the trustee, and was personally present at,

and took part in, several conversations between Mc-Grath and the members of the party, in which conversations the details of the agreement for the purchase of the property by the Four Metals Mining Company were explained and discussed. The members of the party, including the defendant, were conducted around the property, smelter and other buildings connected with the mines. The defendant and those with him remained two days and one night at the mines upon the property in question. At this time there were notices posted upon buildings connected with the mines in conspicuous places which stated that the title to the mines was in the name of the Great Western Ore Purchasing and Reduction Company, and that McGrath held them under a contract of sale.

After leaving the mines the members of the party, including the defendant, went to San Francisco, California. On the way to San Francisco the defendant talked with Johnson and others concerning the contract for the purchase of the properties by McGrath, the trustee. At San Francisco the defendant and Johnson visited the Bureau of Mines for information concerning the mines and mining property.

From San Francisco the defendant and Johnson went to San Jose, California, to the main office of the Four Metals Mining Company. At this office the defendant was introduced to several officers of the company, including the president and secretary thereof. He there conversed with them regarding the property and affairs of the company, including the contract, which was produced. The defendant then had full opportunity to read and examine the contract as he desired, and to obtain full knowledge concerning the affairs of the company.

It was agreed between the defendant and Johnson that each would keep a daily memorandum upon their

trip to California. Each kept a memorandum as agreed, and during their return trip to Hartford each read his memorandum to the other. In the memorandum made by Johnson mention was made of the purchasing contract of E. McGrath, trustee. Johnson then discussed with the defendant how the payments due under the purchasing contract could be met from the profits of the Four Metals Mining Company in operating the mines.

The defendant, after his examination of the mines and mining property, found that the statements contained in the prospectus as to the physical features and value of the property were true, and he was highly enthusiastic regarding them.

On April 30th, 1908, the Four Metals Mining Company issued the certificate of stock which was purchased by the defendant after his return from California. Malcolm gave his note therefor, which was made payable, with interest, to Andrus and Johnson. The defendant paid the interest on this note and renewed it when it became due. He paid the interest upon the renewal note, and in renewal thereof gave the note now in controversy. The defendant paid the interest upon the last mentioned note up to April 10th, 1912.

The defendant agreed to purchase the shares of the capital stock of the Four Metals Mining Company, and gave his original note therefor after his return to Hartford from his visit of investigation to California, when he knew that this company had possession of its properties by virtue of a contract for the purchase thereof, and when he knew of the terms and conditions in the contract, and of the amount which was then due and unpaid upon the purchase price thereof. In the purchase of the stock and the giving of the original note therefor, the defendant was not misled or deceived by the statement in the prospectus that the Four Metals Mining

Company owned the property, or by the omission in the prospectus of any statement that its agent, McGrath, held a contract to purchase the property, or by the absence in the prospectus of any statement of the purchase price of the property and of the amount then unpaid upon the purchase price, as the defendant was fully informed as to all of these facts by reason of the information he obtained and the investigations he made during his trip to California, which was made before he purchased the stock and gave his note therefor.

The note now in controversy was dated December 8th, 1909. The defendant therein promised to pay to Randolph C. Andrus, of San Jose, California, and William D. Johnson, of Hartford, Connecticut, jointly or to their joint order, six months after date, the sum of $1,400, with interest at six per cent per annum. By the indorsements of Randolph C. Andrus and William D. Johnson this note was transferred to the plaintiff about October, 1912.

   *George O. Brott* and *George J. Stoner*, for the appellant (defendant).

   *George E. Beers* and *Charles F. Roberts*, for the appellee (plaintiff).

   RORABACK, J.  Forty of the reasons of appeal are predicated upon alleged errors of the trial court in finding or refusing to find certain facts. The defendant insists that none of these conclusions are justified by the evidence, which we have before us under § 797 of the General Statutes. We have made a careful examination of this evidence, and are satisfied that it discloses no substantial reason for any material alteration in the finding of the trial court. A part of the corrections and additions requested are of immaterial or evidential

facts. Others concern matters as to which the testimony was so conflicting that the trial court was fully justified in the conclusions which it adopted, and the remainder were facts which appear, in substance, in the finding as made.

The controlling question presented by this appeal relates to the alleged fraud and misrepresentation which it is claimed induced the defendant to purchase the stock and sign the original note. The burden of proof upon this proposition was upon the defendant. The trial court has found that the defendant failed to sustain this burden, and has set forth in the finding the subordinate facts upon which it based this conclusion.

It is apparent from an examination of the finding that this conclusion is not legally inconsistent with the subordinate facts detailed in the finding, and that the decision of the court is not controlled by any erroneous view of the law. Therefore the motion to correct is denied.

This case is not affected by chapter 144 of the Public Acts of 1907, page 693, which provides a penalty for making false statements relating to the value of stock, bonds, or property.

The trial court has not found the allegations and claims of the defendant, that the sale of the stock was brought about by the false statements and representations of the payees in the original note, or by the false representations contained in the prospectus of the mining company; but, upon the contrary, it has found that the defendant acted in this matter upon information which he received from other sources as the result of his own independent investigation of the property and the affairs of the mining company.

The trial court erred in not allowing the defendant to cross-examine William D. Johnson as to his financial difficulties at or about the time that he and Randolph

C. Andrus transferred the note in question to the plaintiff. The note was not taken in due course. When transferred to the plaintiff it was more than two years overdue. The plaintiff in his complaint alleged that he was the bona fide holder and owner of the note. The answer, in effect, denied this allegation. There was abundant evidence to sustain the finding of the court below that the assignment was made in good faith and for a good consideration. It is not claimed that there was any fraudulent intent upon the part of Meech, the plaintiff, or that he had notice of any such intent on the part of Johnson. From the facts and circumstances disclosed by the record, it is clear that this ruling, even though erroneous, was harmless.

A material question in the trial of the case was whether the defendant understood the terms and conditions of the contract for the purchase of the property by the Four Metals Mining Company. In this connection the plaintiff offered the deposition of Randolph C. Andrus, one of the original payees of the note. This deposition was taken in San Jose, California, when and where the plaintiff and defendant were both represented by counsel. By this deposition it appears that Andrus testified as follows: "I don't know whether he saw the agreement itself, but he was certainly conversant with the terms of it, for I told him, and every one here. . . . Q. And are you sure he was familiar with the contract between the Four Metals Mining Company and the Great Western Ore Purchasing and Smelting Company? A. Yes, sir."

This testimony was given without the objection or exception of the defendant when the deposition was taken. Objection was made and an exception taken to the admission of this evidence in the trial of the case before the Superior Court. Such testimony is not evidence of a fact. At the most, it is merely the opinion

Meech *v.* Malcolm.

or conclusion of the witness, and ordinarily it cannot have any legitimate bearing on the question to be decided. The admission of this evidence under the circumstances appearing in the record is not a sufficient ground for a new trial. The familiarity of the defendant with the terms and conditions of the contract was satisfactorily proven by other testimony upon the subject.

It appears from the deposition, which was made a part of the finding, that the witness Andrus also testified, in relation to this matter, that "I couldn't say that he did. . . . If he didn't, it was his own fault."

It is apparent that the trial court was not misled upon this point, and that it did not place undue reliance upon the testimony given by Andrus in his deposition.

The remaining reasons of appeal involve no questions which call for discussion.

There is no error.

In this opinion the other judges concurred.