WARREN WORTH *vs.* DANIEL DUNN ET ALS.

First Judicial District, Hartford, May Term, 1922.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, JS.

While standing upon railroad property and watching, with others, the dynamiting of a wall of a building which had recently been destroyed by fire, the plaintiff was struck and injured by a flying fragment of the wall, and sought to recover damages in this action of the defendants who conducted and were responsible for the blasting operations. The complaint contained two counts; the first alleging common-law negligence, and the second, that the defendants in their use of dynamite for the purpose of razing the wall were engaged in an intrinsically dangerous operation fraught with unusual peril to the inhabitants of the city, including the plaintiff, of whose presence on the scene they had full knowledge before and at the time of the explosion. The jury returned a general verdict for the plaintiff for $1,200 damages, and the defendants

appealed. *Held* that with respect to the first count the defendants had no just cause of complaint, inasmuch as the evidence was sufficient to support the verdict, and the issues of fact were submitted to the jury upon instructions which were correct in law and adequate for their guidance.

Touching the second count, the jury were instructed that dynamite was as matter of law an intrinsically dangerous substance, and that if it was used by the defendants under such circumstances as to necessarily expose the plaintiff and others to probable injury, and such injury resulted, the defendants would be liable in damages even though they exercised proper care. *Held* that this proposition was unexceptionable, but that in stating to the jury, in this connection, that it was of no consequence whether the plaintiff used proper care for his own protection or not, whether he came there out of mere curiosity, or whether he was a trespasser on the railroad property, since, being there, the defendants owed him an absolute duty,—the charge was too broad and sweeping in its terms, withdrawing from the jury's contemplation, as it did, any consideration at all of the plaintiff's conduct, however wanton and reckless that might have been.

According to the weight of authority, the mere failure to use due care by one who suffers injury as the result of a nuisance, will not bar his recovery, but wanton, wilful or reckless misconduct upon his part which materially increases the probability of injury and contributes thereto, will preclude a recovery.

A general verdict for the plaintiff imports that all the issues were found in his favor; and therefore if no error intervened in the determination of the issues raised under one count of the complaint, the judgment must stand, although there was error in the charge respecting the other count. In this situation a defendant may protect his interest by securing a separate verdict upon each count, or by the use of interrogatories, if several issues are presented in one count.

Submitted on briefs May 3d—decided October 6th, 1922.

ACTION to recover damages for personal injuries alleged to have been caused by the negligence of the defendants in exploding dynamite, brought to the Superior Court in Windham County and tried to the jury before *Maltbie, J.;* verdict and judgment for the plaintiff for $1,200, and appeal by the defendants. *No error.*

The plaintiff offered evidence to prove and claimed to have proved facts substantially as follows: On

November 25th, 1916, there was standing in the city of Willimantic, a short distance south of the southerly side of Main Street, the rear wall of a building known as the Jordan Block, which had shortly before been destroyed by fire. On that day the defendants, with the assistance of others, were engaged in razing and moving said wall by the use of dynamite. The wall consisted of a stone foundation and brick superstructure. The work of demolition was performed by orders of the defendant Dunn, and was supervised and carried out by the defendants Kelley and Foley, with the assistance of other persons. The defendant Kelley brought the dynamite to the place where the wall stood, arranged the wires and other apparatus used, and fired the same under the direction of the defendant Foley. The charge of dynamite was not blanketed or covered in any manner to prevent the flying of the debris. The wall as standing was not a menace to such portions of the general public as were then upon the public streets. It stood upon private property, abutted upon no public street or way, but solely upon a railroad right of way and yard. Each of the defendants had full knowledge of the power and nature of dynamite and the danger involved in its use, and caused the dynamite to be exploded in the presence of and in close proximity to a large number of people. The explosion ensuing caused the material composing the wall to be thrown with great force for a long distance. At the time of the explosion the plaintiff and many other persons were standing in the driveway leading from Railroad Street easterly toward the rear wall of the Jordan Block, at a point about thirty feet easterly from Railroad Street. Parts of the material composing said wall were thrown with great violence against the leg of the plaintiff, and cut and bruised the same. In this use of dynamite by the defendants, they were engaged in an operation

intrinsically dangerous, obviously exposing the plaintiff and other inhabitants of the city to probable injury and unusual peril. Before and at the time of exploding the dynamite, the defendants had full knowledge of the presence of the persons congregated in the vicinity of the place of explosion. The plaintiff also offered evidence to prove that he was in the exercise of due care and not himself negligent.

The defendants offered evidence to prove and claimed to have proved facts, which are summarized as follows: The south wall of the Jordan Block abutted on the land of the New York, New Haven and Hartford Railroad Company, and was near land of the Central Vermont Company, and was occupied by the main lines of both companies, and by side and switch tracks. The south wall of said block was about fifty feet high above the foundation, and weighed about 259 tons. A large number of freight and passenger trains were continually passing through said yard. Said south wall had been greatly weakened by the fire and was liable at any time to collapse. The defendant Dunn was at that time mayor of the city, the defendant Kelley was assistant superintendent of the water-department, and the defendant Foley was chief of the fire-department, and also inspector of buildings and fire marshal. The attention of Mayor Dunn was called to the dangerous condition of the wall by one of the owners of the building. The mayor conferred with the other defendants as to the situation, and decided that public safety required the prompt demolition of the wall. He procured one Pocaro, an expert in the use of dynamite and an employee of the city, to take charge of the work, which he proceeded to do. The situation required that the wall should be razed by one blast. A large crowd assembled to witness the blasting operations from motives of curiosity. The defendants and other city

officials, including police officers, made strenuous efforts to keep the crowd at a safe distance. Danger signals were placed at conspicuous points, which could be readily seen by all persons in the vicinity, and a rope was stretched from near Railroad Street to a point beyond the east side of the driveway. The wall was completely demolished by the explosion, and most of the debris sank to the ground, except a few fragments, which were flung into the railroad yard, one of which hit the plaintiff, who was standing 140 feet from the wall, and he was seriously injured, suffering a compound fracture of the knee. Fifty pounds of dynamite were used divided equally in eleven charges.

The defendants further offered to prove and claimed to have proved that the work of demolition was performed in a workmanlike and careful manner; that the scattering of fragments from a dynamite explosion was unusual under similar conditions; that plaintiff was present at the time of the explosion and for half an hour before, knew of the necessary and obvious danger likely to ensue, could have seen the danger signals and observed the efforts of the officers to keep the crowd from the vicinity, and was himself ordered to withdraw by an official; and that the injury to the plaintiff was due solely to his own wanton negligence and reckless disregard of danger.

The complaint in the action contains two counts, the first for common-law negligence by reason of want of due care in conducting the blasting operation, and the second alleging that the defendants, by the use of said dynamite in the manner and for the purpose employed, were engaged in an operation intrinsically dangerous, and one which obviously exposed the inhabitants of said city, including the plaintiff, to probable injury and unusual peril, and that the defendants, before and at the time of exploding said

dynamite, had full knowledge of the presence of the persons congregated in the vicinity of said place of explosion.

The defendants requested the presiding judge to charge, in effect, that if the wall in question was a menace to public safety, the defendant Dunn, as mayor, had a duty to perform, as also had the other officials, and that their acts in causing the explosion were done in the performance of public duty, and for injury resulting from such acts, in the absence of negligence, they were not liable. An instruction was also asked as follows: " If the jury shall find that the defendants acted not in their official capacity, but as individuals, by consent of and at the request of the owner of the Jordan Block, and that they acted in good faith for the protection of property and life, and used due care in the selection of Pocaro to have charge of the work of razing the wall, then the defendants have not been guilty of negligence and are not liable for the results of the explosion." The defendants excepted to the failure of the trial judge to charge, in substance, that if the plaintiff had knowledge of the character of dynamite, and the dangers attending its explosion, and was present at the explosion solely from curiosity, and that in spite of directions to withdraw from his position, he remained there until the explosion, he assumed all risks of any consequences resulting to himself from such explosion, and could not recover unless the acts of the defendants were reckless, wanton or malicious.

Further facts appear in the opinion.

*Charles E. Searls* and *Thomas J. Kelley,* for the appellants (defendants.)

*Charles L. Torrey* and *Samuel B. Harvey,* for the appellee (plaintiff).

KEELER, J.   The instructions asked for as regards ordinary common-law negligence and contributory negligence, were correct, as was also the charge of the court, elaborated carefully and at length, and the defendants cannot complain of the instructions given in that regard, and no point is made in the brief challenging the same as applied to the cause of action set up in the first count of the complaint.   As respects the issues raised by the pleadings on this count, the case was properly submitted to the jury.

Upon the facts claimed to be proved with which this count is concerned as summarized in the above statement of facts, the jury could have found both the negligence of the defendants and the freedom therefrom of the plaintiff.   It could properly have found negligence of defendants in not covering the damaged wall before exploding the dynamite, to state but one outstanding feature.   Also, the jury had a right to draw inferences as to negligence in the use of dynamite either in quantity or method from the effects produced. *Rafferty* v. *Davis*, 260 Pa. St. 563, 103 Atl. 951.   As regards contributory negligence of the plaintiff, his fault, as alleged by the defendants, was in standing too near to the place of explosion under all the existing circumstances.   Now with a situation like that involved in the case, there is some point distant from the scene of action where a prudent man in the use of due care may stand.   It was for the jury to say from the evidence where that point was, and whether the plaintiff was or was not negligent in standing where he did stand.   The question of negligence, both as regards the plaintiff and defendants, was a fair one for the jury, and was evidently determined by it in favor of the plaintiff upon the first count, since the verdict is a general one.

The exceptions to the court's refusal to charge that

the defendants were public officials fulfilling a public duty, are abandoned in the brief, wherein they say: " In other words, it seems to us that these defendants can justify what they did, as individuals, if not as officials. To state it a little differently, it does not seem to us that the fact that these defendants were city officials is important, and it may be eliminated from the discussion." Certainly no public statute nor any ordinance of the city of Willimantic has been brought to the attention of this court, which would justify in the circumstances appearing in this case any action by any of the defendants as officials of the city in the manner in which the defendants proceeded. General Statutes, § 2606, provided a remedy in such a situation as existed with respect to the dangerous wall on the Jordan Block, but it does not appear that any attempt was made by anyone to have recourse to its provisions. Furthermore, by the charter of the city of Willimantic, the power is confided to the Common Council to provide for and enforce the removal or demolition of an unsafe building or part thereof. 11 Special Laws, p.1120. In view of these considerations, we need not pass upon the authority of the mayor under the police power to abate any nuisance menacing the public. These considerations dispose of the fourth and fifth assignments of error, so far as they were pressed.

The defendants, however, insist that the situation existing constituted a crisis of the most startling character, involving human lives and presenting an emergency in which the action taken by defendants at the request of the owner of the building was imperatively demanded, and was the only action possible to immediately bring about the results desired. Such a claim and the evidence adduced in its support, might well have been considered by the jury in determining what was due care on the part of the defendants under the exist-

ing circumstances, and doubtless was so considered. But we fail to see how the existence of the emergency claimed introduced any modifying elements in the situation as a matter of law, nor has any consideration or authority been brought to our attention which supports such a contention.

What we have thus far said also disposes of the first assignment of error as covered by requests to charge numbered 37, 38, 39, 41 and the first paragraph of the request numbered 42.

In further considering the charge of the court in relation to the facts claimed to be true, we may observe that defendants in their brief do not question the truth of the facts appearing in the above statement as claimed to be proved by the plaintiff, except as to the claim of due care on his part, and expressly so state.

The second, third and sixth assignments of error bring up for consideration those portions of the charge of the court relating to the creation of a nuisance by the use of a dangerous instrumentality. In the charge the court states the rule as to the use of instrumentalities intrinsically dangerous, as follows: "A person who uses an intrinsically dangerous means to accomplish a lawful end, in such a way as will necessarily or obviously expose the person of another to probable injury, is liable if such injury results, even though he uses all proper care."

The court further charged the jury that if the use of dynamite necessarily and obviously exposed the plaintiff to danger of probable injury, then "the persons who were destroying that wall, or who were responsible for that destruction, are liable to him in damages; and whether under this aspect of the case the plaintiff was himself using proper care for his own protection, whether he came there out of mere curiosity as an onlooker; whether he was upon railroad property with-

out the consent of the railroad and therefore really a trespasser, is of no consequence, because, being there, the rule establishes an absolute duty which the men who were using this dynamite owed to him." All that the trial judge charged upon the issues involved in the second count of the complaint is centered upon the two propositions just stated, and is in amplification of them. Instruction was given the jury that as a matter of law dynamite is an intrinsically dangerous substance. This is correct. *Norwalk Gaslight Co.* v. *Norwalk*, 63 Conn. 495, 527, 28 Atl. 32. The principle enunciated in the first of the two propositions just referred to is without doubt a correct statement of the law. 25 Corpus Juris, p. 195, § 20; 11 R. C. L. p. 673, § 27; *Hay* v. *Cohoes Co.*, 2 N. Y. 159; *Tremain* v. *Cohoes Co.*, 2 N. Y. 163; *Sullivan* v. *Dunham*, 161 N. Y. 290, 55 N. E. 923; S. C. 47 L. R. A. 715 (with note extensively citing authority); *Hickey* v. *McCabe*, 30 R. I. 346; Joyce on Nuisances, §§ 18, 44, 108; 1 Wood on Nuisances (3d Ed.) § 140; *Alexander* v. *Sherman's Sons Co.*, 86 Conn. 292, 85 Atl. 583; *Pope* v. *New Haven*, 91 Conn. 79, 99 Atl. 51. Citations might be multiplied indefinitely. The court, therefore, charged correctly that if the jury found the intrinsically dangerous substance dynamite to have been employed in such a way as necessarily and obviously to expose the person of plaintiff, no negligence of the defendants need be proved.

The second of the propositions above noticed went to the extent of instructing the jury that no act or omission of the plaintiff, having regard to his own safety, could be urged defensively by the defendants. To a large extent and speaking generally, this rule obtains in ordinary cases. "It is a general rule, ordinarily applicable, that the law of contributory negligence has no place in an action to recover damages for a nuisance." Joyce on Nuisances, § 45. See also 2 Wood on

Nuisances (3d Ed.) § 844. The above rule seems to have been strictly and uniformly applied to injuries to real property, but in the consideration of injuries to the person, it has been largely qualified. Joyce on Nuisances, § 46. There are numerous cases which in such a situation as is disclosed by the instant case hold that a want of ordinary care on the part of a plaintiff is a full defense, as in an action for negligence simply; there are others which do not go to this extent but do require some degree of care on the part of a plaintiff in situations like the one under consideration, and regard a reckless and unnecessary exposure to risk of injury by a plaintiff, especially after warning, as a good defense in an action founded on defendants' creation or operation of a nuisance. Most of the cases available for reference are complicated, as is the present one, by a combination of claim for relief for injury arising out of a nuisance, and for simple negligence, and do not in the opinions draw clearly the distinction, nor make evident the exact ground of recovery as between these causes of action. Any extensive citation or discussion of the authorities would be of little use, and unnecessary in view of the very broad scope of the instruction of the trial judge. In *Parker* v. *Union Woolen Co.*, 42 Conn. 399, the distinction between injury from a nuisance and from ordinary negligence is recognized, and yet practically the same rule is applied to the conduct of a plaintiff in the one case as in the other. In that case it was claimed that a horse was frightened by the noise of a steam whistle, and pulled violently upon a rope by which he was tethered, and was killed. The horse had a habit of pulling. It was found as a fact in the case that if the whistle had not been sounded, the horse would not have pulled, and if the horse had not had the pulling habit, he would not have been killed. The questions arising in the case

were whether the whistle was a nuisance, and if so, did it cause the injury complained of. The court in its opinion assumed that a nuisance existed, and then proceeded to say in the opinion that if the plaintiff's "own negligence . . . contributed to the injury it cannot be said, in a legal sense, that it was caused by the negligence of the defendant. Although this is not a case, strictly speaking, of contributory negligence, we think the same principle applies."

It is not necessary to hold in accordance with the claims of defendants, that the lack of ordinary or due care will prevent a recovery by a plaintiff who has been injured by the operation of a nuisance created by the use of an intrinsically dangerous agency, the necessary and obvious effect of which is to cause harm. On this point the authorities are not harmonious. But the instruction of the court in this regard went far beyond negativing the claim just stated. By its terms the jury could not consider any conduct of the plaintiff as regards care for his own safety in connection with the incident. He might heedlessly and recklessly have rushed into imminent danger, and still have been entitled to recover. The conduct of the plaintiff in the premises was entirely withdrawn from the consideration of the jury. For while by the weight of authority the failure of one who suffers injury as the result of a nuisance to use due care will not bar his action for damages for such injury, still his wanton, wilful or reckless misconduct which materially increased the probabilities of injury and contributed thereto will bar such a recovery. While therefore, the defendants were not entitled to an instruction in the terms suggested by the defendants as last quoted in the statement of facts, still the instruction of the trial judge was too broad and without proper limitation. It withdrew from the consideration of the jury matters which

should have been left as questions of fact for its determination, and was erroneous.

Applying the rule enunciated in *Aaronson* v. *New Haven,* 94 Conn. 690, 110 Atl. 872, while the action of the trial judge in instructing the jury with reference to the questions involved in the second count was erroneous, the verdict as an entirety must stand, since, as we have before stated, the verdict was a general one and the jury therefore found for the plaintiff upon the first count.

· The union of claims for relief upon more than one issue presented in one count, where all arise out of the same transaction, is a convenient and generally satisfactory method of procedure; and also the use of two or more counts in stating the cause of action is frequently the only safe method. But in either case the defendant should protect his interest by following the methods suggested in the case last cited, of taking a verdict upon each count, or by use of interrogatories where there is but one count.

There is no error.

In this opinion the other judges concurred.