THE WHITMAN HOTEL CORPORATION ET AL. *v.* THE
ELLIOTT AND WATROUS ENGINEERING
COMPANY ET AL.

JENNINGS, BALDWIN, INGLIS, O'SULLIVAN and SHEA, Js.

Argued January 9—decided March 13, 1951

*Joseph V. Fay, Jr.,* and *James F. Dawson,* for the appellants-appellees (defendants).

*Allyn L. Brown, Jr.,* with whom, on the brief, was *Charles W. Jewett,* for the appellants-appellees (plaintiffs).

INGLIS, J. The principal question involved in this case is whether the plaintiffs may recover for damage done to their building by vibrations of the earth set in motion by the blasting operations of the defendants, in the absence of negligence on the part of the latter.

The finding is not subject to correction. The plaintiff John M. Carbulon was the owner of property consisting of land and a large brick building known as the Wauregan Hotel, located in the business district of Norwich. On August 1, 1947, the Whitman Hotel Corporation, hereinafter referred to as the plaintiff, took possession of the hotel under a lease for twenty years which required it to keep the hotel building in repair. In May, 1947, the defendant Elliott and Watrous, Inc., entered into a contract with the United States war department, corps of engineers, to widen

and deepen the channel of the Shetucket River in Norwich for a distance of 750 feet so as to create a more adequate raceway. The purpose of the project was to prevent the flooding of the downtown district of Norwich in the neighborhood of the Wauregan Hotel. The work was done for Elliott and Watrous, Inc., by the other defendant, the Elliott and Watrous Engineering Company, operating under a subcontract. Pursuant to and in accordance with the specifications of the contract, and in a method usual to such an operation, the defendants, between June 1, 1947, and February 28, 1949, discharged many hundreds of blasts of a dynamite known in the trade as 60 per cent high velocity gelatin in close proximity to a number of compactly located business buildings. The Wauregan Hotel was 230 feet from the river at its nearest point, and operations were carried on in the river on both sides of that point.

At various times between August 1, 1947, and February 29, 1948, many water and heating pipes in the hotel were broken, causing water damage, plaster was cracked in numerous places, and a terrazzo floor was split. The intensity of the vibrations of the earth resulting from the explosions was sufficient to cause this damage, and on several occasions the development of cracks in the pipes and in the plaster was noted nearly synchronously with the sound of the blasting. The parts of the structure which were damaged had been in good condition, and the expenditures made or contemplated by the plaintiff were for the purpose of restoring the building to the condition of usefulness it was in prior to the commencement of the blasting operations.

The trial court concluded that it was the vibration set up by the defendants' blasting operations which damaged the plaintiff's building; that the defendants

were liable for that damage, even though they were guilty of no negligence in the conduct of their operations; and that the plaintiff was entitled to recover the cost of the repairs. It also concluded that the plaintiff Carbulon was not entitled to nominal damages.

It is almost universally held that one who by exploding dynamite causes damage to another's property through flying debris is absolutely liable for that damage irrespective of whether he was negligent either in the selection of the time or place for the blasting or in the method of blasting which he followed. This rule rests on the principle that the explosion of dynamite is an intrinsically dangerous operation and that, therefore, one who engages in it acts at his peril. 2 Cooley, Torts (4th Ed.) § 260; 22 Am. Jur. 179, § 53; Restatement, 3 Torts § 519, § 520, comment e. The rule is adhered to in Connecticut. It has been stated as follows: A person who uses an intrinsically dangerous means to accomplish a lawful end, in such a way as will necessarily or obviously expose the person of another to the danger of probable injury, is liable if such injury results, even though he uses all proper care. *Worth* v. *Dunn*, 98 Conn. 51, 59, 118 A. 467. Although we, in that case, were speaking of liability for injury to person, the principle stated governs liability for injury to property as well.

In spite of the fact that we have stated that liability attaches "even though he uses all proper care," the defendants contend that considerations of negligence are imported into the rule by the phrase "in such a way as will necessarily or obviously expose the person of another to the danger of probable injury." They say, in substance, that this means that no liability attaches unless it would appear to a reasonably prudent person that injury would result from the explosion, and therefore the real basis of the cause of action is failure to

use reasonable care. The phrase has no such intendment. As pointed out above, the basis of liability in this class of case is that one acts at his peril if he engages in an intrinsically dangerous operation. The purpose of the phrase relied upon by the defendants is to define an intrinsically dangerous operation. If dynamite is exploded under such circumstances that it will not expose the person or property of another to the danger of probable injury, then the explosion is not an intrinsically dangerous operation. If the circumstances are such that the explosion does necessarily or obviously expose the person or property of another to the danger of probable injury, then it is an intrinsically dangerous operation. The phrase, therefore, does not make the failure to use reasonable care a condition of liability. It does not make the test of liability the question whether a reasonably prudent person would consider that under the attendant circumstances the explosion would either necessarily or obviously expose another to the danger of probable injury and would refrain from setting off the blast. What it does relate to is the fact of exposure to the danger of probable injury. It means that, to make out a case of intrinsically dangerous operation upon which absolute liability may be predicated, it is essential that it appear that the dynamite was discharged under such circumstances that it, in fact, necessarily or obviously exposed the person or property of another to the danger of probable injury. *Welz* v. *Manzillo*, 113 Conn. 674, 682, 155 A. 841. It is said in Harper, Law of Torts, page 408, in support of the author's statement that the basis of the cause of action is not negligence: "Blasting is frequently not only desirable but absolutely essential under circumstances that entail serious potentialities of harm. Under such circumstances it is not negligence. Nevertheless, there is liability to

make good such losses as come within the scope of the rule, that is such harms, the danger of which is the reason for predicating liability upon this type of conduct. . . . In all of these situations danger may be foreseen by reasonable men, as possible if not probable, but the risks to others are not by the ordinary prudent man, regarded as unreasonable. It is precisely these conditions which give rise to the doctrine of strict liability. Defendant is not regarded as engaging in blameworthy conduct. He is creating hazards to others, to be sure, but they are ordinary, and reasonable risks incident to desirable social and economic activity. But common notions of fairness require that the defendant make good any harm that results even though his conduct is free from fault." The cause of action for damages resulting from the intrinsically dangerous operation of blasting does not necessarily sound in negligence.

In cases in which the damage resulting from the explosion of dynamite has been caused, not by flying debris, but by concussion of the atmosphere or vibration of the earth, there is a clearcut division of the authorities. Some jurisdictions hold that there is no liability for such damage unless there has been negligence on the part of the blaster. This is the so-called New York rule, and it is followed not only in that state but also in Alabama, Arizona, Kansas, Kentucky, Maine, Massachusetts, New Jersey and Texas. *Booth v. Rome, W. & O. T. R. Co.*, 140 N. Y. 267, 278, 35 N. E. 592; *Holland House Co. v. Baird*, 169 N. Y. 136, 141, 62 N. E. 149; *Bessemer Coal, Iron & Land Co. v. Doak*, 152 Ala. 166, 177, 44 So. 627; *Drumm v. Simer*, 68 Ariz. 319, 321, 205 P. 2d 592; *Cherryvale v. Studyvin*, 76 Kan. 285, 287, 91 P. 60; *Williams v. Codell Construction Co.*, 253 Ky. 166, 169, 69 S. W. 2d 20; *Reynolds v. W. H. Hinman Co.*, (Me.) 75 A. 2d 802, 811;

*MacGinnis* v. *Marlborough-Hudson Gas Co.,* 220 Mass. 575, 578, 108 N. E. 364; *Simon* v. *Henry,* 62 N. J. L. 486, 488, 41 A. 692; *Standard Paving Co.* v. *McClinton,* (Tex. Civ. App.) 146 S. W. 2d 466, 468.

In the greater number of jurisdictions, however, as is indicated by the following citations, no distinction is made between damage resulting from the throwing of debris on the one hand and damage resulting from concussion or vibration on the other. The dynamiter is held absolutely liable for the latter as well as the former. *Exner* v. *Sherman Power Construction Co.,* 54 F. 2d 510, 513; *Colton* v. *Onderdonk,* 69 Cal. 155, 159, 10 P. 395; *FitzSimons & Connell Co.* v. *Braun,* 199 Ill. 390, 397, 65 N. E. 249; *Watson* v. *Mississippi River Power Co.,* 174 Iowa 23, 27, 156 N. W. 188; *Cahill* v. *Eastman,* 18 Minn. 324, 332; *Stocker* v. *Richmond Heights,* 235 Mo. App. 277, 283, 132 S. W. 2d 1116; *Wendt* v. *Yant Construction Co.,* 125 Neb. 277, 279, 249 N. W. 599; *Louden* v. *Cincinnati,* 90 Ohio St. 144, 149, 106 N. E. 970; *Muskogee* v. *Hancock,* 58 Okla. 1, 6, 158 P. 622; *Hickey* v. *McCabe & Bihler,* 30 R. I. 346, 355, 75 A. 404; *Feinberg* v. *Wisconsin Granite Co.,* 54 S. D. 643, 645, 224 N. W. 184; *Schade Brewing Co.* v. *Chicago, M. & P. S. R. Co.,* 79 Wash. 651, 658, 140 P. 897; *Brown* v. *L. S. Lunder Construction Co.,* 240 Wis. 122, 128, 2 N. W. 2d 859.

The reasoning supporting the minority rule is presented in the most plausible manner in the leading case of *Booth* v. *Rome, W. & O. T. R. Co.,* 140 N. Y. 267, 278, 35 N. E. 592. The line of argument is twofold. In the first place, it is that a rule which would make a landowner absolutely responsible, irrespective of his negligence, for all damage which he caused to his neighbor's land by vibration from blasting on his own property would be against public policy because it would operate as a deterrent to the improvement and

development of property in thickly settled communities. To this reasoning it might well be replied that public policy does not demand that private citizens go unrecompensed for damage to their property caused by vibration for the sake of encouraging other persons to build structures on other land. If it did, it would also preclude the right to recover for damage done by rocks hurled on their land from their neighbors' explosions of dynamite. As pointed out above, nearly all jurisdictions accord the right to recover for damages caused in the latter manner. Considerations of public policy do not require immunity from liability for damages caused by concussion or vibration any more than from liability for damages caused by flying debris.

The second line of argument implicit in the *Booth* case is this: No cause of action may be recognized by the courts unless it is one for which some form of action was recognized at common law. Damage sustained by any person which could not be recovered in some one of those forms of action is damnum absque injuria. The only two possible forms of action available for the recovery of damages because of injury to real property by blasting on another's land were trespass and trespass on the case. Damages for injury caused by concussion or vibration set in motion by the explosion of dynamite could not be recovered in an action of trespass because such vibrations are not a physical invasion of the real property. Recovery for such damage may be had in an action on the case only in the event that it has been the result of a nuisance or caused by negligence. Therefore, it is reasoned, damages for injury caused by vibrations are recoverable in cases not involving a nuisance only upon proof that the one who in exploding dynamite set the vibrations in motion was negligent.

With this reasoning we are unable to agree.[1] The old technical rules of common-law pleading with their finespun distinctions between forms of action no longer obtain. They should not control the substantive law of today. If it is necessary to talk about trespass as distinguished from trespass on the case, it would seem that the jarring of a man's real property by vibration or the concussion in the atmosphere above it is, in actuality, a physical invasion of that property. Trespass to real property is the doing of direct injury to that property with force. 52 Am. Jur. 836, § 2. When one's building is damaged by vibration or concussion from a blast, the injury is done directly by the physical movement of the earth or the air which has been started by the blast. For any practical purpose such movement is just as much a physical invasion as the throwing of debris through the atmosphere and the injury done by it is just as direct. As is said in *Exner* v. *Sherman Power Construction Co.,* 54 F. 2d 510, 514, "Yet in every practical sense there can be no difference between a blasting which projects rocks in such a way as to injure persons or property and a blasting which, by creating a sudden vacuum, shatters buildings or knocks down people." The Iowa court puts it well in *Watson* v. *Mississippi River Power Co.,* 174 Iowa 23, 31, 156 N. W. 188: "Physical invasion of the property of another does not necessarily imply an actual breaking or entering of the plaintiff's close by the wrongdoer in person, or casting upon his premises any particular kind of missile or other particular thing or substance. The employment of force of any kind which, when so put in operation, extends its energy

---

[1] For a full discussion and criticism of the New York rule, see Gregory, *Trespass to Negligence to Absolute Liability,* 37 Va. L. Rev. 359, 370, 374.

into the premises of another to their material injury, and renders them uninhabitable, is as much a physical invasion as if the wrongdoer had entered thereon in person and by overpowering strength had cast the owner into the street."

Connecticut is committed to the rule that, when one engages in the inherently dangerous operation of blasting with dynamite under such circumstances that the person or property of another is necessarily or obviously exposed to the danger of probable injury, he does so at his peril. He is absolutely liable for damages which result from that blasting whether he was negligent in his conduct of the operation or not. *Worth* v. *Dunn*, 98 Conn. 51, 59, 118 A. 467; *Welz* v. *Manzillo*, 113 Conn. 674, 682, 155 A. 841. To exempt such a one from liability for damage caused by vibrations or concussion resulting from his blasting would be to put a limitation upon the scope of the rule which would not be justified by any considerations of logic or practicality.

The defendants make the additional contention that public policy should prevent the application of the rule of absolute liability to this case because the blasting was being done pursuant to a contract with the United States government and, therefore, it was being done for the public welfare. The record is uncertain as to whether this claim was made in the trial court, but there is enough indication that it was to warrant our consideration of it. The argument is not in any sense based upon the principle that a sovereign is immune from suit, as, of course, it could not be, because the United States is not a party to this litigation. Nor is it based on the doctrine of governmental immunity. The contention really is that the social value of the use of dynamite in a public work outweighs the risk of damage resulting therefrom through concussion and

vibration and that for that reason the rule of absolute liability ought to be relaxed.

It is true that in *Booth* v. *Rome, W. & O. T. R. Co.,* 140 N. Y. 267, 278, 35 N. E. 592, the leading case adhering to the minority rule, it is indicated that if the blasting had been done pursuant to a contract with the state that would be an added reason to deny absolute liability. This was upon the authority of *Benner* v. *Atlantic Dredging Co.,* 134 N. Y. 156, 161, 31 N. E. 328. No case has come to our attention which, in a jurisdiction adhering to the rule of absolute liability, holds that the application of the rule should be affected by the fact that the blasting was done in aid of a public work. Looked at from the viewpoint of a property owner, damage to his property is just as real when it results from blasting in connection with a public work as when it results from dynamiting in pursuance of a purely private enterprise. If the property owner is to be compensated in the one case, he should be compensated in the other. The advantages to society of a public work are not so great as to require that private citizens suffer damage without compensation. Moreover, even the defendants are not contending that there should be no liability for damage resulting from the throwing of debris in dynamiting pursuant to a contract with the government. They ask that the rule of absolute liability be relaxed only as regards damage resulting through concussion or vibration. As was pointed out above, there is no real difference between the two, and reason would be strained if we held that the rule of -absolute liability for blasting in connection with a public work applied in one case and not in the other. We conclude that the trial court was right in deciding that the defendants were liable in this case for such

damage as was caused by their blasting operations, irrespective of negligence on their part.

The trial court concluded that the plaintiff was entitled to recover as damage the actual cost to it of the repairs made or intended which were reasonably necessary to restore the building to its former condition. The defendants assign error in this conclusion. The ultimate measure of damages in a case such as this is the diminution in the value of the plaintiff's property caused by the defendant's tort. It is, however, well established that such diminution in value may be determined by the cost of repairing the damage, provided, of course, that that cost does not exceed the former value of the property and provided also that the repairs do not enhance the value of the property over what it was before it was damaged. "And when the property injured may be repaired, if the repairs will substantially restore the property to its former condition, the cost of such repairs will ordinarily furnish proper proof of the loss." *Hawkins* v. *Garford Trucking Co.*, 96 Conn. 337, 341, 114 A. 94; see *Ferrigno* v. *Odell*, 113 Conn. 420, 427, 155 A. 639. Recognizing this to be the law, the defendants, nevertheless, contend that to allow the plaintiff to recover the full cost of repairs puts it in a better position than it was in before the damage was done, because it is supplied with new pipes and fresh decoration of its rooms in the place of pipes and decorations which had depreciated prior to the damage. The answer to that is that the trial court found that the expenditure for repairs would "restore the building of the plaintiff to its condition of usefulness prior to the commencement of the blasting operations." This means that the repairs would do no more than put the building into the condition it was in before the blasting. Then too, as we said in *Ball* v. *Pardy Construction Co.*, 108 Conn. 549, 551,

143 A. 855, "From the very nature of the situation, the amount of loss cannot be proved with exactitude and all that can be required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which will enable the trier to make a fair and reasonable estimate." The trial court measured the damages correctly.

The defendants also assign error to the conclusion of fact made by the trial court that their blasting operations were the proximate cause of the damage sustained by the plaintiff. Without discussing the subordinate facts found, suffice it to say that they justify the conclusion.

The rulings on evidence excepted to by the defendants and pressed by them on appeal were correct. One group of such rulings was the admission in evidence of several letters written by the attorney for the plaintiffs to the defendants calling attention to the fact that their blasting was damaging the plaintiffs' property. One of the claims made by the plaintiffs on the trial was that the defendants were negligent in conducting the blasting operations. Negligence had been denied by the defendants. The letters were relevant to that claim because they put the defendants on notice that it was claimed that they should exercise greater care. The letters were not self-serving declarations or hearsay, as contended by the defendants, because they were admissible to prove, not the truth of the statements contained therein, but the fact of the defendants' knowledge of the claimed effect of their operations, since that knowledge should influence their future conduct. Another group of rulings admitted testimony of damage done by the defendants' blasting to property at a greater distance from the point of the explosions than the plaintiffs' property. This evidence was relevant to the claim of the plaintiffs that the force

of the explosions was sufficient to cause the damage of which they complained and, therefore, had a bearing on proving the causal connection between the blasting and the damage to them.

The plaintiffs on their appeal press two assignments of error. The first of these is that the court erred in failing to find that the defendants were negligent. In view of our conclusion that negligence was not an essential element of the plaintiffs' case, this question is academic and need not be discussed. The other assignment is that the court erred in refusing to award nominal damages to the plaintiff Carbulon. This plaintiff suffered no actual damage and, therefore, no substantial injustice was done in denying him any recovery. If we assume, without deciding, that he was entitled to nominal damages, the refusal of the trial court under the circumstances to award them to him does not justify a reversal. *Sacramone* v. *De-Matteo*, 136 Conn. 66, 70, 68 A. 2d 167; *Went* v. *Schmidt*, 117 Conn. 257, 259, 167 A. 721.

There is no error on either appeal.

In this opinion JENNINGS and SHEA, Js., concurred.

BALDWIN, J. (concurring). I concur in the result but I do not agree to the meaning given in the majority opinion for the words "in such a way as will necessarily or obviously expose the person of another to probable injury," which appear in *Worth* v. *Dunn*, 98 Conn. 51, 59, 118 A. 467. The majority opinion states that these words do no more than define an intrinsically dangerous operation and that to incur liability one must use an intrinsically dangerous instrumentality in such a way that it necessarily or obviously exposes persons or property to probable injury. That connotes a degree of fault on the part of the defendant which is, at least, negligence and, probably,

even more than negligence. It carries with it an inference of wilful or deliberate misconduct. The majority opinion subscribes to the rule of absolute liability imposed when dynamite is exploded and hurls debris which injures persons or damages property, and we apply that rule to injury or damage caused by vibration and concussion. Absolute liability is liability without fault. If the words quoted mean what the majority claims for them, they add a needless and confusing qualification or condition. If the same rule is to apply for injury or damage caused by concussion and vibration as applies for damage caused by a direct hit, then these words in the *Worth* v. *Dunn* case mean no more than that the dynamite was used under circumstances and conditions which demonstrate to the trier that it could and did in fact cause the damage for which complaint is made.

O'SULLIVAN, J. (concurring). I concur in the result on the basis of the dogmatic proposition, with which the opinion begins its legal discussion, that "one who by exploding dynamite causes damage to another's property through flying debris is absolutely liable for that damage irrespective of whether he was negligent. . . ." This principle makes an insurer of the blaster, and rightly so. *Exner* v. *Sherman Power Construction Co.*, 54 F. 2d 510, 512. Dynamite is an intrinsically dangerous substance. *Worth* v. *Dunn*, 98 Conn. 51, 60, 118 A. 467; *Norwalk Gaslight Co.* v. *Norwalk*, 63 Conn. 495, 527, 28 A. 32. The possibility of its doing damage is great. The blaster should be subjected to absolute liability for injury to any property caused by the potentially destructive energy of a force which he has intentionally released. If I understand the opinion correctly, it makes liability absolute only when dynamite is used "in such a way as will necessarily or obvi-

ously expose the [property] of another to the danger of probable injury." This means, inferentially, that under circumstances which do not fall within the quoted phrase liability is conditioned on negligence. This emasculates the principle that the blaster acts at his peril. It reaches a result with which I am not in accord.