MARY T. S. STARKEL, ADMINISTRATRIX (ESTATE OF
FRANK A. STARKEL), ET AL. *v.* THE EDWARD
BALF COMPANY ET AL.

BALDWIN, O'SULLIVAN, WYNNE, DALY and CONWAY, Js.

Argued April 6—decided May 3, 1955

*Joseph P. Cooney,* with whom, on the brief, was *Henry F. Cooney,* for the appellant (named defendant).

*John P. Harbison,* with whom were *Thomas J. Conroy,* assistant attorney general, and, on the brief, *John J. Bracken,* attorney general, for the appellees (plaintiffs).

O'SULLIVAN, J. The named plaintiff brought this action against two defendants, the Edward Balf Company and the Hercules Powder Company, to recover damages for fatal injuries received by her decedent. Subsequently, the state of Connecticut entered as a party plaintiff, seeking reimbursement, from any judgment obtained, for payments to the widow of the decedent under the requirements of the Workmen's Compensation Act. The court rendered judgment against the Balf company and in favor of the other defendant and ordered the state to be reimbursed as requested. The Balf company, hereinafter called the defendant, has appealed.

The defendant seeks to have stricken from the finding two of the paragraphs, but the request is denied since both are supported by credible evidence. The defendant also asks to have added to the finding additional facts as set forth in thirty-one paragraphs of the draft finding, but the additions cannot be made. Many of the suggested facts are not admitted or undisputed. *Rowley* v. *Salladin,* 139 Conn. 642, 643, 96 A.2d 219; Practice Book § 397. Other proposed paragraphs consist of immaterial or evidential matters. *Meech* v. *Malcolm,* 88 Conn. 720, 725, 92 A. 657; *Walsh* v. *Hayes,* 72 Conn. 397,

403, 44 A. 725. The remaining paragraphs of the requested additions incorporate, in somewhat different language, facts already covered in the finding or facts which, if added, would not advantage the defendant. *Tiernan* v. *Savin Rock Realty Co.,* 115 Conn. 473, 475, 162 A. 11; *Malone* v. *Steinberg,* 138 Conn. 718, 720, 89 A.2d 213. A further attack upon one other paragraph of the finding on the ground that it is of doubtful meaning has no merit. The finding, as made, must stand.

The court found the following facts: On July 19, 1948, and prior thereto, the defendant owned a quarry in Newington. It was a large, crescent-shaped affair, with an opening toward the west and with high cliffs on the northeast, east and south. The quarry floor extended approximately 1500 feet from north to south and 500 feet from east to west. The rock face of the cliff to the south rose 200 feet, perhaps, above the floor. For over twenty years quarrying had been carried on at this locality and dynamite blasts have been exploded in the southerly cliff every two or three months.

The plaintiff's decedent, Lieutenant Frank A. Starkel, became a state policeman during 1927 and, from 1942 on, served as inspector of special hazards and explosives. It was his duty to be present at all blastings to see that regulations pertaining to explosives were complied with and that the public was protected. In his official capacity, he had attended, in addition to many other blastings around the state, almost every blast at the defendant's quarry since 1942. He became familiar with the details of its layout and with the surrounding physical conditions, including the extent of the defendant's property and the location of the nearby highway.

The defendant scheduled a blast at its quarry for

May 18, 1948. Some time before that date three holes, varying in depth from 160 to 190 feet, had been drilled in the southerly cliff. Although they were loaded and wired to explode simultaneously, only one hole fired. This created a very dangerous condition because of the unexploded dynamite in the misfired holes. This danger was recognized by the defendant and by the decedent, who was in attendance. In all of its many years of blasting, the defendant had never had any experience in handling a misfired hole. For this reason it sought the advice of an expert connected with the Hercules Powder Company and, as the result of a plan suggested by him and approved by the decedent, one of the misfired holes was exploded on May 28, 1948. This explosion was hazardous because of the dynamite in the other hole and because of the possibility of rifling, all of which was known to the expert, to the decedent and to the defendant. Following the explosion, the remaining misfired hole was robbed of all but four or five feet of thickness of overburden for sixty feet down from the top of the cliff.

At the suggestion of the expert from the Hercules company, the defendant drilled another hole twenty feet to the rear and twenty feet to the side of the last misfired hole. It was hoped that the firing of the new hole would not explode the dynamite in the misfired one but would roll it out onto the floor of the quarry where it could be picked up by hand. Everyone concerned in the operation, including the decedent, knew that the hope might not be realized and that the unexploded charge in the misfired hole might be fired and scatter stone over the quarry floor. The blast in the newly drilled hole was set for 1 p.m. on July 19, 1948. The decedent gave orders that not only the quarry floor but the entire Balf premises were to be

cleared and that traffic on the abutting highway was to be stopped. Shortly before the time set for the blast, the decedent and Edward Balf, an officer in the defendant's organization, rode by automobile to a point on the quarry floor 1200 feet from the face of the southerly cliff. The place where they parked was the one from which both had watched blasting operations for many years. While they were seated in the automobile, shortly before the blast occurred, the general superintendent of the quarry came along in his car. After stopping, he said to them, "You are not going to sit here, are you?" To this the decedent replied, "You take care of your business and I'll take care of mine." The superintendent then left and drove entirely off the premises. At 12:59 p.m. the decedent got out of the automobile to answer a call of nature. Within a minute, the charge in the new hole was fired, causing the dynamite in the misfired hole also to explode. The result was that an umbrella of stone, of varying sizes and weights, was rifled out over the quarry floor and beyond. The decedent was then standing with his back to the explosion. While in that position he was struck by a flying stone. He was taken to the hospital and died on the same day as the result of his injuries.

Neither the decedent nor Balf had any idea that stone would be thrown by the explosion to the place where they had parked. At no time in the entire history of the quarry had stone ever been projected by blasting for more than 225 feet from the face of the cliff. The place where the decedent and Balf parked was also a vantage point if the dynamite in the misfired hole should be rolled out onto the quarry floor, creating an entirely new hazard against which the public would require immediate protection.

In its answer, the defendant set up three special defenses, (1) that the decedent was guilty of contributory negligence, (2) that he had assumed the risk of injury, and (3) that his death was caused by his own wanton, wilful and reckless misconduct. The defendant, admitting that the blast on the day in question created an absolute nuisance, concedes that the first special defense is legally impotent against such a nuisance. *Worth* v. *Dunn*, 98 Conn. 51, 62, 118 A. 467. The main contention urged upon us is that the court erred in concluding that the facts narrated above did not establish the second and third defenses, either of which, the defendant maintains, is a bar to recovery.

An individual who, to attain a lawful objective, uses an intrinsically dangerous means in such a way as necessarily or obviously to expose the person of another to the danger of probable injury is liable if such injury results, even though he exercises all proper care. *Worth* v. *Dunn*, supra, 59. The explosion of dynamite is an intrinsically dangerous means. *Whitman Hotel Corporation* v. *Elliott & Watrous Engineering Co.*, 137 Conn. 562, 565, 79 A.2d 591. Hence, one who explodes dynamite acts at his peril. Ibid. It does not follow, however, that a blaster is liable under all circumstances for personal injuries sustained by another as the result of the blast. Thus, wanton, wilful or reckless misconduct on the part of the injured person which materially increases the probabilities of injury and contributes thereto will defeat his right of recovery. *Murphy* v. *Ossola*, 124 Conn. 366, 372, 199 A. 648; *Welz* v. *Manzillo*, 113 Conn. 674, 683, 155 A. 841; *Worth* v. *Dunn*, supra, 62. But "[t]he misconduct must be wilful, that is, intentional, or wanton, that is, so heedless as to be virtually equivalent to wil-

fulness, or must be such as to indicate a reckless disregard of the plaintiff's own safety. *Menzie* v. *Kalmonowitz,* 107 Conn. 197, 199, 139 Atl. 698." *Loethscher* v. *Campo,* 107 Conn. 568, 571, 141 A. 652; see *Hoffman* v. *Bristol,* 113 Conn. 386, 393, 155 A. 499. It is likewise true that assumption of the risk is a good defense against an action upon an absolute nuisance. *Beckwith* v. *Stratford,* 129 Conn. 506, 514, 29 A.2d 775; *Murphy* v. *Ossola,* supra, 372. To charge a plaintiff with assumption of the risk, it must appear that he knew or ought reasonably to have known and comprehended the peril to which he was exposed and, having such knowledge and comprehension, continued of his own volition to subject himself to that peril. *Ballou* v. *Jewett City Savings Bank,* 128 Conn. 527, 531, 24 A.2d 260; *Freedman* v. *Hurwitz,* 116 Conn. 283, 287, 164 A. 647.

Whether wanton, wilful or reckless misconduct or assumption of the risk has been established in any given case depends on the circumstances. The decedent was a police officer, specifically detailed to attend blastings. There was a legitimate reason for his presence on the quarry floor. He was charged with the duty of protecting the public. He placed himself, preparatory to the blast, 1200 feet from the southerly cliff and at a position customarily occupied by him on previous occasions. Never before had stone been thrown more than 225 feet. To be sure, he was aware of the possibility that the dynamite in the remaining misfired hole might, upon the firing of the newly drilled hole, explode and cause rifling of the face of the cliff, but he had no idea that stone would thereby be hurled more than 1200 feet. Whether these and the other proven facts established that he had assumed the risk or that his conduct was wanton, wilful or reckless presented

factual questions for the trier to answer. That the decedent got out of the automobile, just seconds before the blast, to answer a call of nature at a place where subsequently occurring events demonstrated the dangerous exposure to which he submitted himself, and that he remained at the location which he and Balf had selected, after his conversation with the quarry superintendent, do not, as the defendant contends, conclusively demonstrate that he had assumed the risk of injury or was guilty of wantonness, wilfulness or recklessness. Those factors were, at most, only circumstances to be considered by the court in reaching its conclusion on each of the special defenses. Since the court's conclusions could reasonably have been made, they must stand. *Riordan* v. *Gouin,* 119 Conn. 235, 237, 175 A. 686; *Vanderkruik* v. *Mitchell,* 118 Conn. 625, 629, 173 A. 900; *Potz* v. *Williams,* 113 Conn. 278, 281, 155 A. 211.

The plaintiff filed an appendix of the entire evidence. The appendix runs to 239 pages. Whenever possible, evidence should be stated in narrative form. Practice Book § 448. Not only does this lessen the burden upon this court but it promotes the effort to reduce the financial expense of an appeal. Under the rules, the expense of printing an appendix is taxed as costs to the prevailing party. Practice Book § 452. That section, however, provides that if he shall print the evidence where its substance could be stated as well in narrative form, he may be penalized by the denial of costs for the expense of the unnecessary printing. The rule applies to this appeal. The plaintiff is not entitled to costs for printing her appendix.

There is no error.

In this opinion the other judges concurred.