[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by the corporate owner of a commercial building against an explosives' contractor who was performing such services on another commercial property adjacent to the plaintiff's. It is claimed that as a result of the blasting the building of the plaintiff sustained certain damages. CT Page 7865
The facts of the case are fairly straight forward.
The plaintiff is a corporation with a plant facility located at 100 New Wood Road in Watertown, Connecticut. The defendant is an explosives company hired in conjunction with new construction activities to be conducted on the property owned by Anthony and Helen Demsey and located next door to the plaintiff's property, at 78 New Wood Road in Watertown, Connecticut.
The blasting activities occurred on five days in late November and early December of 1987. The closest distance between the blasting holes and the plaintiff's building is somewhere between one hundred and ten and one hundred and fifty feet. The defendants caused geophones to be placed in various locations in the area to record seismographic readings during the blasting.
Prior to the blasting the plaintiff's general manager, Allen Bernardini, made a visual inspection of the building. He characterized himself as a great believer in prevention maintenance and that he was "intimately" familiar with the building including roof and grounds. Prior to the blasting the defendant caused photographs to be taken of the exterior of the building.
The defendant advised Allen Bernardini that the blasting was to commence. The parties had agreed as to the hours of the day that the blasting would occur and that a horn would be blown to announce an impending blast.
The plaintiff shut down its computers and put plywood on its windows. According to Allen Bernardini the building shook so that he could feel it. He noted a number of shots that had a rippling effect. He described the feeling as being in a "minor earthquake". Although seated, he claims to have felt the vibration in his chair as well as hearing the blast itself. He went outside and had motor vehicles moved further away from the blasts. Some of his employees were scared. About one to two months later he began to notice new damage to the building. Various photoraphs [photographs] of before and after conditions were put into evidence by both parties. (In fact, over one hundred photos were placed in evidence CT Page 7866 along with over fifty other exhibits including blasting log books, seismographic printouts, bills and maps.)
Mr. Bernardini testified as to claimed damage to the building. Some as stated aforesaid that was discovered within two months of the blasting and some discovered several years after the blasting. (The court finds that the latter claims are too remote in time and have not been shown to be causally related to the blasting to be considered.)
The plaintiff called as its expert witness Murray Brenner a professional engineer. While not a structural engineer or learned in seismology, Mr. Brenner did "know cracks". Mr. Brenner identified a number of cracks in the plaintiff's building which he stated were not attributable to shrinkage or settlement, but only to trauma such as blasting.
The plaintiff also called Robert Santamaria a building contractor with several decades of building experience and two college degrees in the field. He in fact constructed a major addition to the plaintiff's building in 1985. He is intimately acquainted with the geology of the foundation. In 1988 Mr. Santamaria was called back to the building by Mr. Bernardini.
Mr. Santamaria testified that upon inspecting the building that the "found more cracking than would normally be found in a masonry building." He added that blasting causes shaking so that "new cracking will appear and other cracking will be aggravated." He noted that the width of these cracks was not normal and that they were at different planes. He also observed "many cracks" in some areas which he also observed to be "unusual" and attributable to shaking.
The defendant's president, Thomas Gelormino, also the holder of two college degrees in the field, testified. He detailed the pre-blast survey and explained how geophones monitor blasts both as to seismic readings and air vibration. He testified that all readings were within scientifically allowable limits at all times. When such is the case he "takes it on faith" that there will be no resultant damage. CT Page 7867
Defendant's other significant witness was D.T. Froedge a seismologist and a mechanical engineer. He believed that this blasting job was done very well and that it is "not conceivable to him that this blasting caused any damage at all." He concluded not just as a matter of "faith" but as a matter of science that there was "not any probability that blasting" caused the claimed damage and in fact that there was "no engineering possibility" of that occurring.
The court is presented with conflicting expert testimony. The defendant's expert is perhaps better grounded in the academic area. The plaintiff's experts are perhaps better grounded in the practical areas. Pursuant to the law espoused in King v. New Haven TrapRock Co., 146 Conn. 482 (1959), the court chooses accept the testimony of its lay witnesses as to the cause of the damage to its property.
Although the court was impressed with the defendant's expert testimony, it is more impressed with Mr. Bernardini's testimony concerning the actual physical sensation of the blasts on site and the subsequently appearing damages.
The court concludes that certain damages were a direct result of the blasting and not the result of the alternative causes suggested by the defendant. SeeLausier v. McElhone,, Superior Court, Judicial District of Hartford, Docket #438143 (April 23, 1992, Shaughnessy, J.) Additionally, this conclusion is consistent with our law that blasting with dynamite is an inherently dangerous activity for which one has absolute liability.Whitman Hotel Corporation v. Elliot Watrous EngineeringCo., 137 Conn. 562, 570 (1951).
The court awards damages in the amount of $7,990 which constitutes 85% of the repair work actually performed by the Watertown Construction Co., Inc. Claims for additional damages have been rejected earlier by the court which similarly rejects a claim for future maintenance costs as well.
Judgment shall enter accordingly against the CT Page 7868 defendant.
GILL, J.