## MARY L. SENTIVANY *v.* KALMAN SENTIVANY, JR.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued May 9—decided June 24, 1958

*James N. Egan,* for the appellant (plaintiff).

*Salvador A. Fasi,* with whom was *Anthony L. Di-Lorenzo,* for the appellee (defendant).

DALY, C. J. The plaintiff has appealed from the judgment of the court denying her petition for a divorce upon the ground of intolerable cruelty, for alimony and for custody and support of three minor children, issue of the marriage.

The plaintiff has assigned error in the refusal of the court to add sixty-three paragraphs of her draft finding to the finding, contending that they contained facts which were admitted or undisputed. Many of the suggested facts are not admitted or undisputed.

That a witness testified to a fact without direct contradiction is not of itself sufficient; the trial court must be the judge of the credit to be given to a witness. Practice Book § 397. Certain of the facts sought to be added are already in the finding. As some of the proposed paragraphs consist of immaterial or evidential matters, the facts contained in them cannot be added. *Starkel* v. *Edward Balf Co.,* 142 Conn. 336, 337, 114 A.2d 199. Other additions sought would not directly affect the ultimate facts upon which the judgment depends. No useful purpose would, therefore, be served by making them. *Cole* v. *Associated Construction Co.,* 141 Conn. 49, 51, 103 A.2d 529. The plaintiff assigns error, also, in the finding of the facts contained in seventeen paragraphs of the finding. She asserts that these facts were found without evidence. As shown by the narrative of the pertinent evidence contained in the appendix to the defendant's brief, this claim is without merit. No material corrections of the finding are warranted.

The plaintiff claims that the court erred in concluding upon the facts found that she was not entitled to a divorce. The court found the following facts: The plaintiff and the defendant were married on July 21, 1948. After the marriage, the plaintiff repeatedly requested the defendant to move from Hartford to San Francisco, California. The defendant had established a reputation as a window displayer in this state and was doing well. In February, 1949, to please the plaintiff, he agreed to their moving to San Francisco. At that time he transferred a savings account of $2100 to a bank in California. Soon after moving to California, he obtained employment as a window displayer. The eldest child, Sandra, was born in San Francisco on August 12,

1949. She developed an allergy and suffered from eczema. A number of doctors were consulted. They suggested that the child's condition might be caused by the climate in San Francisco. The defendant's income in San Francisco was not sufficient to meet the family needs, and he was required to withdraw $1100 from his savings account for that purpose. In 1950, after the plaintiff reluctantly agreed to do so, the parties returned to Hartford, where they lived in a four-room apartment. One of the rooms was rented to a friend of the defendant. Two months after their return, Sandra's condition healed. The parties have two other children, born in 1952 and 1955. The plaintiff instituted this action on February 13, 1956. Since then the plaintiff and the three children have resided in San Francisco.

While the parties lived together, the defendant purchased five dresses for the plaintiff. Two of them were maternity dresses. He bought a fur coat for her. It cost $100 more than one she had selected. The defendant voluntarily had a savings account of $11,000 changed from his name to that of both of the parties, making it a joint account. He, as the insured, procured a life insurance policy in the amount of $15,000 and named the plaintiff the beneficiary. During the eight years the parties lived together, the defendant purchased, for himself, one winter suit and one summer suit. He always took the plaintiff marketing. He paid the bills and handled the money. He did not give the plaintiff an allowance. He was saving his money to buy a home for the family, to educate the children and to ensure the economic security of his wife and children. He abused the plaintiff physically only once. On that occasion, while they were riding in the family car, the plaintiff leaned toward him and spoke in anger because he did

not want to move again to San Francisco. He pushed her face back with his open hand. On the day the youngest child was born, the plaintiff had been having labor pains. The defendant left home in the afternoon to attend to his work. Because he had not returned in time, his father took the plaintiff to the hospital. On one occasion, the defendant threw milk in the face of the eldest child, Sandra, and slapped her because she disobeyed. The defendant called the plaintiff stupid in the presence of her mother.

During the last several months the parties lived together, tension was building up. The plaintiff was unwilling to converse with the defendant, and the defendant was unwilling to listen to her when she spoke to him. The parties differed on unimportant matters. The plaintiff's threats to return to California exhausted the defendant's patience, and he told her to go there, if she desired, but to leave the children with him. The parties had argued before the plaintiff left the defendant in February, 1956, and went to California. She gave the defendant no notice that she and the children were leaving or where they were going. After arriving in San Francisco, she did not ask the defendant for money. On one occasion the defendant inquired whether she needed money. She informed him that she and the children were getting along with her mother's help. Between February, 1956, and the date of the trial in December, 1956, the defendant sent the total sum of $20 to his wife and children. He did, however, send gifts to the children. The plaintiff's health and mental condition improved after she went to California.

The term "intolerable cruelty" has a subjective as well as an objective significance. There must be not only proof of acts of cruelty on the part of the defendant but also proof that in their cumulative effect

upon the plaintiff they are intolerable in the sense of rendering the continuance of the marital relation unbearable to her. *Goddard* v. *Goddard,* 143 Conn. 727, 118 A.2d 906. The facts found fail to show cruelty on the part of the defendant so conclusively that we can hold as a matter of law that their cumulative effect upon the plaintiff rendered the continuance of the marital relation unbearable to her.

There is no error.

In this opinion the other judges concurred.