[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These cases are related matters. The first action, No. 091888, is a suit to dissolve the parties' marriage in which the husband is the plaintiff. The second action, No. 092724, is a suit for a restraining order initiated by the wife. Orders issued in the second case have precluded the husband's occupancy of the marital residence during the pendency of the dissolution action. The parties have agreed that the two cases should be considered together. For the sake of clarity, the husband will be referred to as "plaintiff" and the wife as "defendant" throughout this memorandum.
 I.
The plaintiff is 42 years old and the defendant is 35. They were married in Waterbury on June 29, 1984[1] and have always resided in Connecticut. The marriage is a second one for both parties in that their previous unions were terminated by divorce. No children have been born of the marriage. The plaintiff has four children by his prior marriage whereas the wife has none.
In the dissolution action, the plaintiff in his amended complaint and the defendant in her cross complaint have alleged that the marriage has broken down irretrievably with no hope of reconciliation. Further, each party, in their respective pleadings, claimed that the other had committed acts of adultery and acts amounting to intolerable cruelty.[2]
Both parties testified to the irretrievable breakdown of their marriage; a finding to this effect is made and the marriage is dissolved. See General Statutes Section 46b-51. Before going into the proof offered on the "fault" grounds which can be important in a determination of alimony and property awards, see Id. Sections 46b-81(c), 46b-82, there is one aspect of the dissolution action that deserves mention. The parties had lived together for several years before they married. At the trial, however, each claimed that the other was incapable of sexual relations because of a physical disability.[3] No medical evidence was offered to substantiate these claims and they are regarded as nonproven especially in view of the charges of adultery.
Adultery requires proof by a fair preponderance of the evidence that the other spouse has engaged in extra-marital sexual relations. Brodsky v. Brodsky, 153 Conn. 299, 300, 301 (1966). CT Page 2660 Although adulterous acts are most often proved by circumstantial evidence, the circumstances must be such as to lead the "guarded discretion" of the trier to a conclusion of guilt. Turgeon v. Turgeon, 190 Conn. 269, 278 (1983). The term "guarded discretion" means that the court should not allow the intense interests of the parties to color the facts. Where the circumstances lead reasonably to innocent interpretations, adultery should not be found. On the other hand, a conclusion of adultery should not be avoided when a sound and unprejudiced judgment leads to that conclusion. Neff v. Neff, 96 Conn. 273, 276 (1921).
To support his allegation of adultery, the plaintiff relied upon the defendant's relationship with Michael S. who works for the private investigating firm that she hired in September, 1989, after being served with the complaint. In his case-in-chief, the plaintiff established the presence of Michael S. in the marital residence on many occasions even to being with the defendant in her bedroom in the evening hours with the lights off; that one time the defendant went to the home of Michael S. in Rockville; and that Michael S. had charged several telephone calls to the defendant, her mother and her girlfriend on the parties' credit card. At a post-trial hearing held on January 25, 1991 in response to a motion and affidavits filed by the plaintiff, he presented additional evidence concerning supposed overnight stays by Michael S. at the marital residence.
There is no disagreement with the plaintiff's contention that the defendant's behavior following the separation of the parties is a factor that the court can consider in determining the causes of the breakdown of the marriage. See Ferrucci v. Ferrucci,11 Conn. App. 369, 370-71, cert. denied 205 Conn. 805 (1987). Where the court and the plaintiff part company, however, concerns what inferences on the issue of adultery are to be drawn from the evidence that he produced.
To counter the plaintiff's evidence, the defendant proved that she engaged Michael S.'s firm to spy on him. The plaintiff worked and, at times, slept in a workshop-garage located on the same premises as the marital residence. Her bedroom was a place from which the plaintiff's activities at the garage could be and were observed. The defendant's one visit to Michael S.'s home was incidental to an unsuccessful search for a witness in nearby Manchester. And the credit card telephone calls had been made by Michael S. in response to calls made by the defendant.
Both Michael S. and the defendant denied the existence of any romantic relationship. With respect to the evidence presented at the additional hearing, the court finds that Michael S. came to the marital residence, at the defendant's request, to discuss her complaints of harassing telephone calls. Further, the recitations CT Page 2661 in the plaintiff's post-trial affidavit as to admissions by Michael S. of overnight stays at the residence were not proven at the hearing.
The court concludes that the plaintiff's evidence, at best circumstantial in nature, does not warrant an inference of adultery by the defendant.
A contrary conclusion is reached regarding the defendant's accusation of adultery by the plaintiff. On several occasions, Michael S. followed the plaintiff to a parking lot on West Main Street, Waterbury, where the defendant left his vehicle and entered a car driven by a woman who was identified as Elizabeth G. From the parking lot, the plaintiff and Elizabeth G. drove to her home. Stakeouts by Michael S. established that on these occasions the plaintiff and Elizabeth G. emerged from her apartment at 6:30 a.m. and drove to the parking lot where he had left his vehicle. Moreover, the plaintiff admitted that he was romantically involved with Elizabeth G. and that he had had sexual relations with her. The plaintiff's admission alone would be sufficient evidence for the court's conclusion. Senderoff v. Senderoff, 133 Conn. 300,302-03 (1946).
Intolerable cruelty, the other accusation that each party has made against the other, requires not only proof of acts of cruelty but also proof that in their cumulative effect these acts were intolerable in the sense that they rendered the continuance of the marriage unbearable. Sentivany v. Sentivany, 145 Conn. 380,383-84 (1958).
The plaintiff claimed that causes for the breakdown of the marriage were the difficulties in having sexual relations because of the defendant's physical condition and the attitude of his children toward her. Noted earlier was the court's conclusion that neither party had proved a claim of sexual impotency on the part of the other. With respect to the children, the plaintiff admitted that the defendant had paid or helped out with his support obligations; that she brought birthday and Christmas gifts for his children and that she picked them up for visits. In 1985 or 1986, the plaintiff's oldest child came to live with the plaintiff and the defendant as part of their household. In 1987, the defendant, but not the plaintiff, attended a graduation ceremony for two of his children. The court concludes that the plaintiff's allegation of intolerable cruelty was unsubstantiated.
The defendant established that the plaintiff was prone to violence. In October, 1986, the plaintiff's business advertisement was omitted from the telephone directory. The plaintiff's reaction upon discovery of the omission was to try to rip the directory and to throw shelving and goods out of the CT Page 2662 refrigerator. In 1988, the plaintiff lost interest in the defendant and would become abusive when she tried to be affectionate. On one occasion, in 1988, the plaintiff came home wearing a pair of undershorts that was different in color than the pair he had put on in the morning. When questioned by the defendant, he pushed her down on the tile floor of their bathroom and kicked her. In May, 1989, the defendant received an anonymous telephone call informing her that Elizabeth G. was the plaintiff's mistress. When she repeated this conversation to the plaintiff, he chased her into the washroom and hit her on the head. In August, 1989, the defendant went to the garage to ask about the use of a pickup truck. On finding the plaintiff "dressed up", she accused him of dating another woman. The plaintiff's response was to force her out of the garage by pulling on her hair and to throw her to the ground. The plaintiff then picked up a rock but the defendant ran behind a pickup truck.
The plaintiff left the marital residence in August, 1989. On September 22, 1989, he returned and ordered the defendant to leave the house. In their bedroom, he said he would throw the defendant and the bed out of the large window. The plaintiff tried to lift the bed. On the next day, the defendant secured the restraining order which, after a hearing and with some modification, is presently in effect.
The defendant described her health as good although she becomes nervous with resultant stomach trouble. Presently, she is not under a doctor's care. She does, however, take Xanax, a prescribed mild tranquilizer, as needed.
In sum, the defendant's evidence revealed that the plaintiff's attitude toward her had changed from indifference to open hostility marked by increasing episodes of physical violence. It is this continuing course of conduct that made the continuance of the marriage unbearable. See Garrison v. Garrison, 190 Conn. 173,180-81 (1983). Intolerable cruelty by the plaintiff was proven.
 II.
Having found that the defendant proved her claims of adultery and intolerable cruelty, the court's next task is to determine the parties' requests for relief.
In his brief, the plaintiff asks for orders that will dissolve the marriage, transfer the marital residence and the 1984 S-10 Chevrolet pickup truck to him, dissolve the restraining order, require the defendant to pay certain expenses resulting from the restraining order, divide the I.R.S. refund check equitably, require each party to pay the debts listed in their CT Page 2663 respective affidavits, preclude the payment of alimony by either party and require each party to pay his or her own counsel fees.
On her part, the defendant also wants a dissolution of the marriage and seeks orders that will transfer to her the plaintiff's equity in the residence until sixty days after he releases it from her occupancy for the sum of $370,000.00 and the Chevrolet S-10 pickup truck. She also wants the I.R.S. refund check to be divided equally between the parties. With respect to the household furniture and contents, the defendant requests that all be awarded to her except the following which she acknowledges were owned by the plaintiff prior to the marriage: the kitchen table and chairs, the Philco console television, a console stereo, the livingroom set consisting of a couch, loveseat and two chairs, the John Deere lawnmower and a desk, chair and filing cabinet located in the plaintiff's workshop-garage. Two items in the garage are claimed by the defendant to be her property, the Zenith 19 inch color television and the portable microwave oven. In addition, the defendant also asks that she be permitted to keep all jewelry and personal belongings as well as the savings accounts, securities, money market account and the two IRA accounts listed in her affidavit dated June 1, 1990. With respect to debts, the defendant suggests that each party pay the debts listed in his or her affidavit provided she shall be held harmless on a joint obligation to Centerbank.
If, the court sets an occupancy fee for the defendant's continued residency in the marital home, she suggests that such fee should be no more than payment by her of yearly taxes, repair costs, when such are under $100.00, and carrying charges associated with the house except for the swimming pool debt that should be paid by the plaintiff. For counsel fees, the defendant asks that the sum of $10,000.00 be awarded to her as a reasonable allowance for her defense in the dissolution action.
In determining whether property should be assigned or alimony should be awarded, General Statutes Sections 46b-81(c) and 46b-82
contain the same criteria. The court is directed to consider the length of the marriage, the cause or causes of dissolution, the age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties. For assignments of property, Section 46b-81(c) imposes the additional consideration of the contribution of each of the parties in the acquisition, preservation and appreciation in value of their respective estates. Some preliminary findings are, therefore, in order, before going into the specifics of the claims for relief.
As already stated, the plaintiff is 42 and the defendant is 35. Their health appears to be good. The plaintiff is a high CT Page 2664 school dropout who received his G.E.D. while serving with the United States Marines. The defendant is a high school graduate who has taken courses made available by her employer. The marriage lasted almost seven years. The causes for its breakdown are acts of the plaintiff which constituted adultery and intolerable cruelty.
The defendant is employed by CityTrust Company as manager of its Watertown branch with the title of assistant vice-president. Her net weekly wage is $407.51. CityTrust contributes to the defendant's retirement plan and helps to provide health insurance. In terms of bank accounts and related liquid assets, the defendant has checking accounts in the total amount of $1,501.39, IRA accounts in the total amount of $3,842.38, a money market account of $3,433.05 and 207 shares of CityTrust stock valued at $1,785.00.
The plaintiff is the owner of Neri Sand Gravel Company, a business operated in corporate form. He reports a weekly income of $346.00 and claims weekly business deductions of $1,025.00 for a net weekly loss of $679.00. Contrary to the assertions of his affidavit, the plaintiff represented in a financial statement filed with CityTrust on June 8, 1989, that his business and other assets were $545,822.00 with liabilities of $10,800.00 for net worth of $535,022.00. The liabilities must be increased by $28,000.00 which, based on testimony from Attorney Brogue, is the amount of a consent judgment rendered against him in a suit brought by the South Central Regional Water Authority.
Upon the filing of financial statements, the plaintiff was able to secure a bank loan to purchase the land at 17A Terry Road, Prospect upon which the marital residence is located and another loan to help finance the building of the structures thereon which were constructed without the need of a mortgage.
Of principal concern is the disposition of the Prospect real estate which each party wants. The ownership of that property is, in and of itself, a story. And the point of beginning must be the two-family house at 17 Vivian Drive, Waterbury where the parties lived when they were married. 17 Vivian Drive was purchased after the plaintiff's divorce from his first wife. Title was taken in the names of the plaintiff and his mother, Maria Neri. The purchase price was $65,000.00 with a down-payment of $14,000.00 or $16,000.00. The plaintiff paid the down-payment, made all of the mortgage payments, lived on the first floor and kept the rents paid by the second floor tenants. Subsequently, the plaintiff conveyed his undivided one-half interest to his mother who lives elsewhere in Waterbury. His reason for the conveyance, as stated at the trial, was that he did not want 17 Vivian Drive threatened by business law suits. CT Page 2665
The property in Prospect was purchased on June 20, 1986, before 17 Vivian Drive was sold. The defendant attended the closing alone and title was taken in her name. Attorney Brenia represented the sellers. He received the name of the defendant, as purchaser, from the real estate agent. The plaintiff knew of the status of the title, if not on the closing date, later when notice of a mechanic's lien for work done on the premises was served.
In 1987, after the Prospect house was built, the aforementioned suit by the South Central Water Authority was initiated. The plaintiff, his business entity and the defendant were made parties. As part of the litigation, the Water Authority requested a disclosure of assets. When the plaintiff learned that the defendant's status as a party meant a disclosure of the house, he insisted that she transfer it to his mother. His motive was the same as for the previously owned Vivian Drive property — to place the house beyond the reach of creditors. The defendant signed the quitclaim deed, which had a stated consideration of $10,000, on November 4, 1987. Subsequently, the defendant was released from the Water Authority's suit when the plaintiff executed a bond. On April 9, 1989, after difficulties between the plaintiff and defendant had become apparent, Maria Neri quitclaimed the Prospect property to her daughter and the plaintiff's sister, Dolores Neri Buechele, for the consideration of "love and affection."
Payment for the house in Prospect came mainly from the net proceeds of the sale of 17 Vivian Drive supplemented by insurance payments that the plaintiff had received for damage caused to equipment. The insurance payments were placed in a money market savings account that was in the defendant's name.
Despite the absence of legal title, the plaintiff claims an equitable interest in the Prospect property. In his affidavit, he valued his equitable interest at $350,000.00, a figure remarkably similar to the valuation of $370,000.00 that was placed on the property by William Lanese, a professional appraiser hired by the defendant. The property consists of 1.65 acres with an eight room high quality house, two car attached garage and in-ground swimming pool. There is also the three-bay detached workshop-garage that was erected by the plaintiff for his business in 1989. No basis, professional or otherwise, was offered to support the plaintiff's valuation of the property but it is another indication that he regards himself as the owner. The court finds from Mr. Lanese's written appraisal and testimony that the real estate known as 17A Terry Road, Prospect has a market value of $370,000.00.
The validity of the present title of Dolores Neri Buechele CT Page 2666 and the former title of Maria Neri are beyond the scope of the present actions.[4] The court, however, can deal with the plaintiff's equitable interest. Pursuant to General Statutes Section 52-22, the court transfers sixty percent (60%) of the plaintiff's equity to the defendant and orders that on or before July 1, 1991, the plaintiff shall pay the sum of $222,000.00 to the defendant whereupon, pursuant to General Statutes Section 46b-66a, she shall convey the sixty percent of said equity to him. The transfers shall be tax-free to the defendant meaning that if her federal income tax liability is increased or if any additional taxes are incurred from the transfers, the plaintiff shall pay the amount of such increase or new taxes to the defendant on or before April 30, 1992. Compliance with the court's order may require that the plaintiff place a mortgage on the property. But after listening to the testimony of Maria Neri and Dolores Neri Buechele, the court is of the opinion that the plaintiff's lack of legal title will not pose a problem to the obtainment of a mortgage.
Until the plaintiff has paid the sum of $222,000.00 to the defendant and for forty-five days thereafter, she may continue to reside at 17A Terry Road. During the defendant's continued residency, she shall be responsible only for heating, utility, burglar alarm and cable bills and for any repairs that do not individually exceed $100.00 in costs. The plaintiff shall be responsible for all other expenses and for all real estate taxes that may accrue or become payable after the date of this memorandum. Adjustments, if any, shall be made as of the date the defendant vacates the premises.
Until the defendant is no longer in residency, the "Chinese Wall" created by the restraining order shall remain. The plaintiff shall not enter the house or any part of the premises except for his workshop-garage and the driveway that provides access to Terry Road. Conversely, the plaintiff shall stay away from the workshop-garage.
In awarding the defendant sixty percent of the plaintiff's equitable interest, the court has rejected the plaintiff's analysis of economic and noneconomic contributions. Contributions, whether classified as economic or noneconomic, do not have to be direct ones in order to merit consideration. In the situation at hand, the defendant proved that she ran the household on her salary. Additionally, she proved that she served as the plaintiff's unpaid bookkeeper not only in his present business, but also for the various enterprises that preceded it. Taking all of the factors of Sections 46b-81(c) and 46b-82 into account, the court's award to the defendant of sixty percent of the plaintiff's equitable interest and providing for a reconveyance to him upon the payment of $222,000.00 is fair and CT Page 2667 just as it also allows him to carry on with his business.
Next to be considered is the disposition of the 1984 S-10 Chevrolet pickup truck which is claimed by both parties. The defendant acquired sole possession of the truck when she took it from the plaintiff's oldest child, Domenic Neri, Jr., at his place of employment. The plaintiff testified that the truck was bought for his son. The defendant's testimony was that the truck was purchased for her use in traveling to and from work especially in the winter. She allowed Domenic Neri, Jr. to use the truck and for its use he paid her $20.00 per week. The court credits the testimony of the defendant and awards her the truck. The parties are ordered to complete all documentation necessary to place title in the defendant within thirty days after the filing of the dissolution judgment.
The restraining order issued by Judge Byrne required that the defendant pay $400.00 per month to the plaintiff as reasonable use and occupancy of the house and that she be responsible for the costs of running the home including the oil, cable and telephone bills. The plaintiff interprets Judge Byrne's orders as requiring the defendant to pay the charges for the burglar alarm, the installment payments on the debt owed for the swimming pool and the real estate taxes. The court agrees insofar as the burglar alarm is concerned and notes that the bill has been paid.[5] With respect to the swimming pool debt and the real estate taxes, the court neither interprets Judge Byrne's order as providing for their payment nor considers them to be necessary attributes of a use and occupancy. Since the court's decision is that upon payment of $222,000.00 the sixty percent of the equitable interest transferred to the defendant shall revert to the plaintiff, the real estate taxes and the swimming pool debt are properly his obligation. Although the restraining order is to continue until the defendant vacates the premises, her financial obligations incidental to the restraining order are superseded by the orders set forth previously in this memorandum.
The I.R.S. check in the amount of $2,436.91 is apportioned equally between the parties. And, in addition to all other financial requirements, the plaintiff is to pay, as periodic alimony, the sum of $1.00 per year to the defendant.
Included in the parties' respective affidavits[6] are listings of assets and liabilities. The plaintiff shall keep as his sole and separate property the account in the Connecticut National Bank, all vehicles, equipment and accounts receivable related to his business and his jewelry and personal belongings. The defendant shall keep as her sole and separate property the 1984 Chevrolet Camaro, all of her jewelry and personal belongings, the various bank, I.R.A. and money market accounts that she has CT Page 2668 listed, the life insurance policy with Connecticut General and the 204 shares of City Trust stock. Some adjustments are necessary for household furniture and furnishings which the parties have listed only in a general manner. The defendant is awarded all of the furniture and furnishings located in the house at 17A Terry Road, Prospect except the following items which are given to the plaintiff: kitchen table and chairs; Philco console television, a console stereo, livingroom set consisting of a couch, love seat and two chairs and the John Deere lawnmower. The plaintiff is awarded all of the furniture and furnishings in the workshop-garage except the Zenith 19 inch color television and the portable microwave oven which are given to the defendant.
Regarding the parties' liabilities, the plaintiff shall pay all of the liabilities listed in his affidavit. In addition, the plaintiff shall pay the $400.00 due on the Sears account, as listed in the defendant's affidavit, it having been found that such account was for the purchase of improvements at 17A Terry Road that will outlast the defendant's occupancy, the judgment-debt to the South Central Regional Water Authority which surfaced during the trial, the debt owed for the swimming pool which does not appear to have been included in his affidavit, all other debts relating to his business and the real estate taxes owed to the Town of Prospect. The defendant shall pay all the debts listed in her affidavit with the exception of the $400.00 that is owed to Sears. Each party may make arrangements with creditors concerning these obligations. Each party, however, shall indemnify and hold harmless the other party for any payment that said other party may be required to make on any debt that this memorandum does not assign to him or to her.
The dissolution action included extensive discovery motions, depositions and was the subject of a lengthy trial. The related restraining order necessitated more than one hearing on the plaintiff's unsuccessful motion to terminate it. An award of counsel fees is within the discretion of the court and if such an award is made, it must be based on the respective financial abilities[7] of the parties and the criteria set forth in Section46b-82. General Statutes Section 46b-62. Garrison v. Garrison, supra at 177. Utilizing the appropriate standards,[8] the court finds that the defendant's request for $10,000.00 is reasonable and awards this sum to her. Payment of counsel fees is to be made by the plaintiff within sixty days from the filing of the dissolution judgment.
 III.
The task of preparing the judgment files in both actions is assigned to the attorney for the defendant. The judgment files are to be ready within three weeks. CT Page 2669
BARNETT, J.
ENDNOTES