[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiff in the First Count of her Amended Complaint seeks money damages alleging that the Defendants' condominium development of adjoining property damaged her fence, driveway, dirtied her house and property, and changed the natural flow of water causing rainwater to flow onto her land. In the Second Count the Plaintiff alleges a trespass essentially because of unlawful deposits of dirt and debris during construction activities and claims damages to a chain link fence, driveway and increased flow of water because of the alleged change of contour of the Defendants' property.
The Third Count claims injuries she suffered and will suffer because of the effect upon her use and enjoyment of her property.
The Defendants essentially deny liability for each claimed damage and claims by way of a revised counterclaim that the complaints made by the Plaintiff was intended to harass and annoy the Defendants and delayed the construction of the development requiring the Defendants to incur additional expenses. A motion to strike the revised counterclaim was granted. The Defendants failed to plead over and accordingly judgment enters on the counterclaim.
The properties of the Plaintiff and Defendants adjoin each CT Page 8306 other north to south. The properties face Woodward Avenue in the Annex section of New Haven. Essentially the neighborhood is comprised of single and multi family houses. During the real estate boom of the eighties developers were developing condominium units on multi family properties. The Defendants Frank Pelligrino and Emilio Arduini purchased 672 Woodward Avenue which is adjacent to the Plaintiff's southerly boundary. The Plaintiff is the owner of 680 Woodward Avenue. The rear of both properties is owned byExxon. The Exxon property is undeveloped and contains oil tanks a distance from the boundaries of the parties' boundary.
On June 29, 1988 the Defendants Annex-Wood began developing their property by first knocking down a garage on their land. While demolishing the garage on the first day and for only about a day to tear down the garage, the Defendants struck and damaged the boundary link chain fence and pushed debris onto the land of the Plaintiff. The debris was removed and was not there for any considerable period of time. The damage to the link fence although admitted was strongly disputed as to the extent and value.
The second item of claimed damage was that done to the Plaintiff's driveway. Prior to construction the adjoining properties had abutting evenly bituminous driveways. The driveways had been there for years prior to the development. The Plaintiffs assert that the Defendants removed its half of the driveway which caused cracking to her driveway when water running off the Defendants' land eroded the subbase causing the claimed cracks to the Plaintiff's driveway. [Exh. F, J, K and OO]. The Plaintiff claimed her driveway had been Jennited in the fall of 1987 by the Plaintiff's husband.
The third claimed item of damage is that starting in 1988-1989, the rear portion of the Plaintiff's property began to flood whenever it rained for a couple of days causing ponding. It was further claimed and evidence offered that the ponding affected the Plaintiff's gardens and she thereby lost the use and enjoyment of her gardens.
The Plaintiff offered an expert Robert L. Jones to examine her property to determine the cause of the damage to the fence, and driveway [Exh. T]. The first time Jones saw the property was August 17, 1988 and in his report stated that the cause for cracks in the driveway was caused by water runoff to the exposed subbase of the Plaintiff after the removal of the adjoining pavement of the Defendants' driveway. The expert also stated in said report that CT Page 8307 the Defendants raised the grade of the former driveway concentrating a flow of water onto the Plaintiff's driveway. The expert also stated at that time that damage was done to the link fence. Later the same expert in March 1990 made a computation of the storm water detention facility of the Defendants. He found that the galleries did not have sufficient available storage and were not adequate so that when the galleries filled the excess storm water flowed onto the Plaintiff's property. The expert on June 7, 1990 [Exh. T] broke down in his report the total cost to repair the property with an estimate of $52,115. The estimate was based on his opinion to eliminate the flooding would require an increase in grade to the Plaintiff's property, install soil erosion and sediment controls and retaining walls and reseeding. The development ceased by November 1988. The Plaintiff claims since the spring of 1989 and continuing to the present time the surface water flooding remains a problem.
The Defendants admit at page 4 of their Post Trial Brief that during construction they damaged the chain fence; that in removing the old driveway, a small section of the curb which runs on the property line on top of the two driveways cracked; and that despite taking usual precautions the removal of the top soil caused a dusty condition to exist for a few days. The Defendants deny the extent of the damage and the reasonableness of the amounts to repair. The Defendants installed a water drainage system consisting of interconnected catch basins and several galleries which act as water detention basins to permit the collection of water and slow distribution of storm water. The catch basins and galleries are disbursed throughout the Defendants' property.
In October 1991 Barry Steinberg, a civil engineer was engaged by the Defendants to correct a problem of a gallery not adequately percolating in the southwest corner of the development resulting in flooding during heavy storms. Mr. Steinberg designed an outlet by placing a pipe which drained excess water into a ditch behind the property into the Exxon property. The designed pipe resolved the problem with the gallery system in the southwest corner, and the Defendants received a certificate of occupancy.
Steinberg testified that all water drainage goes to the southwest corner of the Defendants' property and that the southwest corner is the farthest point from the Plaintiff's property. Steinberg further testified that the development elevations goes south away from the Plaintiff's property. Steinberg further testified that the flow of water on the adjoining properties runs CT Page 8308 from Woodward Avenue, the front of both properties towards the rear. Steinberg testified that only in one corner of the development the elevation is higher than the Plaintiff's property and that it slopes to the rear of the Defendants' property into the Exxon ditch to the rear.
Steinberg testified that the chain fence at the rear of the Plaintiff's property acts as a damn and to relieve the problem of the Plaintiff's water flow that the rear of the Plaintiff's land be lowered at the Exxon boundary. Steinberg further testified that to repair the driveway the cost to recap is $1.50 per square foot with the use of the old subbase. The life expectancy of a driveway depends on how it is maintained. It is not unusual to have cracking over a years time.
The court did view the premises after all the evidence was presented in the presence of counsel. The driveway was there for many years and the cracking appeared to be that which would develop over years of weather conditions and use.
Steinberg testified that flooding occurs from not being able to release water. Water usually percolates and gets absorbed. Ground water in this case was not increased by gallery collection and that it had no effect on the Plaintiff's property.
Mr. Steinberg's opinion which the court accepts as the more credible is that the development was not the cause for the continuous flooding to the rear of the Plaintiff's property.
The Plaintiff who makes the claim for dust created by the development demonstrated that condition with photographs [Exh. Z and AA]. The Defendants testified that they instructed their contractors to wet down the area. The condition lasted for no more than a week. The Plaintiff testified that no money was paid to clean the house and she cleaned her inside house herself.
The damage to the fence does not warrant a replacement of the entire fence. The court observed the fence. It is not reasonable to expect a new fence for the entire area when only a portion was damaged. The court rejects the testimony of Mr. Jones for the replacement of a fence at a cost of $6,637.00, or that of Frankson Fence at a cost of $4,414.00 for the area. The measure of damages in this case is the cost of repairing the damage to restore the property to its former condition "provided . . . that the repairs do not enhance the value of the property over what it was before it CT Page 8309 was damaged." Whitman Hotel Corp. v. Elliot Watrous EngineeringCo., 137 Conn. 562, 573 (1951). The Plaintiff offered no evidence to repair the fence and only estimates to replace the entire fence. The fair and just compensation is costs of repairs to the portion of the fence damaged. The Defendants submitted [Exh. 9] the cost $1,197.00. Accordingly, the court awards damages of $1,197.00 for the cost of repair to the fence.
The Plaintiff seeks a new driveway at a cost of $6,150.00 which would remove all the old driveway but also other areas not proven to be caused by the development. Such an approach is overkill. The expert Jones' testimony concerning the driveway is of no value. The estimate includes a removal of the old subbase and rebuilding a new beautiful driveway. From the court's observations and the evidence adduced at trial the court concludes that the cracking of the driveway was pre-existing. The driveway was installed prior to 1970 when the Plaintiff became owner. The driveway area from an examination of a map offered in evidence is approximately 1,500 feet [Exh. S]. The expert Steinberg testified to recap the driveway would cost $1.50 per square foot.
The Plaintiff is entitled to the reasonable cost of repair not a new driveway. Whitman supra. Accordingly, the sum of $2,250.00 is awarded for the damage to the driveway.
The claim for damages concerning the flooding was given by the testimony of Mr. Jones who in his report dated June 7, 1990 [Exh. T] states to correct the alleged problem, would be to raise the land of the Plaintiff, install soil and sediment controls, erect retaining walls and landscape at a cost of about $39,028. The Plaintiff further offered evidence from a real estate appraiser as to site damage arising from the claimed flooding. Mr. Lye in his letter [Exh. C] states that the damage of site flooding is $2,400.00.
The diminution in the value of the damaged property may be determined by the cost of repairing the damage, provided of course, that the cost does not exceed the former value of the property and provided also that the repairs do not enhance the property over what it was before it was damaged. Whitman Hotel Corp. v. Elliott Watrous Engineering Co., 137 Conn. 562, 573 (1951).
When the injured property may be repaired, if the repairs will substantially restore the property to its former condition, the cost of such repairs will ordinarily furnish proper proof of the CT Page 8310 loss. Whitman Hotel Corp. v. Elliott Watrous Engineering Co.,137 Conn. 562, 573 (1951); Hawkins v. Gaford Trucking Co., 96 Conn. 337,341 (1921).
The costs of repair testified to by Jones exceed the value arising from the claimed flooding. The Defendants' expert did not offer any cost estimates to lower the Plaintiff's land to accommodate the flow of surface water. The experts dispute the continuing effect of flooding and this court agrees with the Defendants that the continuing flooding if any is caused by the flow of storm rainfall towards the rear of the property from Woodward Avenue. However, flooding existed during the construction period for which this court concludes the damages to be $2,400.00.
The court further awards as compensatory damages for effect upon the use and enjoyment of her property during the construction period the sum of $1,500.00.
Accordingly, judgment may enter on the First Count for the sum of $1,197.00 for the repair of the fence; $2,250.00 for the repair of the driveway; $2,400.00 for the damages caused by the flow of water onto the rear portion of the property; and experts fee of $2,990.00 for a total of $8,837.00. Judgments may enter on the Second Count for the trespass and deposits of debris and dirtied conditions created during the development in the amount of $2,000.00. Judgment may enter on the Third Count for the loss of use and enjoyment of her property caused by the developments in the amount of $1,500.00 plus court costs as to all counts.
Frank S. Meadow State Trial Referee